Plaintiff, a Pennsylvania corporation, instituted this suit against defendant, a Louisiana corporation, seeking judgment in the sum of $299.04, with five per cent per annum interest thereon from judicial demand until paid. It alleged that on October 30, 1934, it entered into an agreement with Automobile Bone Yard, a commercial partnership in Shreveport, Louisiana, wherein said partnership was made the local jobber for the distribution of Pedrick heat-shaped piston rings and other Pedrick products manufactured by plaintiff. The contract provided for the way in which it could be terminated by either party, at which time the jobber was required to give an accounting and to remit for all sales of plaintiff's products consigned to it and to deliver all products consigned to it in its possession at the time either to the plaintiff or the authorized distributor of plaintiff in its territory.
Plaintiff alleged that on the same day it also entered into a contract with the defendant herein whereby it was authorized to act under the agreement with Automobile Bone Yard as distributor for plaintiff, and wherein defendant agreed to abide by all the conditions and terms of that contract. It further alleged that under the contracts, the distributor, defendant herein, was authorized upon termination of the contract with the jobber, to take physical possession of any of plaintiff's property which had been consigned to the jobber and *Page 211 
at the time in his possession and to hold same subject to plaintiff's direction. It was required to notify plaintiff of the possession and to submit a verified, physical inventory of the merchandise held by it. The distributor further agreed to pay plaintiff for any products which the inventory showed to be missing from the consigned stock and had the right to return for credit any merchandise withdrawn by it from the jobber, otherwise to pay for it.
Plaintiff also alleged that under said contracts it consigned to Automobile Bone Yard soon thereafter $299.04 worth of the products covered by the contracts and at a later date, which it does not know, defendant took physical possession of this merchandise and failed to notify it of its actions and/or furnish an inventory, as required by said contracts; that said merchandise has never been returned and defendant has never paid for it. Plaintiff therefore prayed for judgment against defendant in the amount of $299.04.
Defendant in answer admitted the contracts and that the consignment was made, as alleged; that it took possession of the consigned merchandise in the presence of plaintiff's salesman and representative, who assisted in checking and packing it and removed it to defendant's place of business; and that on October 31, 1939, in the presence of said representative of plaintiff, the goods were shipped to defendant by truck line. Defendant denies owing plaintiff any amount and alleged that a true accounting will show it has paid plaintiff in returned goods, by checks and other credits allowed it under the contract. It further alleged that since that date until the present suit, which was filed February 6, 1942, no claim or demand has been made on it by plaintiff.
This is a suit for an accounting and the lower court correctly allowed testimony covering all the transactions between plaintiff and defendant under the contract making defendant distributor of plaintiff's products in this territory. Counsel for defendant strenuously objected to any testimony pertaining to any other consignment than the one to Automobile Bone Yard. If defendant's objection had been good, the judgment of the court would have to be in favor of plaintiff and not in favor of defendant, as rendered by the lower court, for the reason defendant admits taking possession of that consignment and the burden was on it to prove by a preponderance of the testimony that it had returned the goods, and we are convinced it has not met that burden.
Plaintiff offered a deposition of its credit manager, who testified that the goods consigned to Automobile Bone Yard had never been returned or accounted for by defendant and that it had no knowledge that defendant had taken possession of the stock until so informed by a representative of Automobile Bone Yard in September, 1941; that no written report, as required by the contract, had been given it of the taking of possession by defendant and no inventory furnished it. The testimony of the president of defendant company is the only testimony in the record to rebut plaintiff's. He testified that the goods taken from Automobile Bone Yard were shipped to defendant on October 31, 1939, and that defendant's records show bill of lading and "so forth" covering this shipment. He later testified that this merchandise was picked up by a representative of defendant company by the name of Frank Speaker. The bill of lading and "so forth" were not offered in evidence. The offering of these documents was necessary to prove the shipment and meet the burden, which was on defendant. The two statements made by the president of defendant company are contradictory and insufficient to prove that the merchandise was returned to the plaintiff.
However, when we consider all transactions between plaintiff and defendant from the inception of the contract until it was terminated, as disclosed by this record, we are forced to the conclusion that defendant is not indebted unto plaintiff in any amount.
Plaintiff's witness, in answer to interrogatory No. 40, states that at about the time defendant claims to have returned the merchandise to it, it did receive piston rings from defendant to the value of $2,027.84 and issued credit to defendant for same. He contends, however, this covered all the merchandise consigned to defendant and another jobber, Central Auto Parts Company, and did not cover the items sued for here.
We find in the record credit memoranda given defendant by plaintiff prior to that time in the amounts of $368.48, $194.12 and $17.41, totalling $580.01. There is also another small credit of about $8.00, all of *Page 212 
which more than offsets plaintiff's claim for $299.04. Plaintiff has made no attempt to explain these credits in any way.
We therefore conclude that defendant is not indebted unto plaintiff in any amount, and the judgment of the lower court rejecting plaintiff's demands at its cost is therefore affirmed.